# Constitutionality of an Appropriations Bill Denying Funds for Certain Civil Litigation

Legislation directing that no funds be expended in the preparation or prosecution of a civil lawsuit by the United States against a state public utility district regarding riparian rights in a river owned by the federal government is not subject to serious constitutional objection.

July 30, 1952

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

A question has arisen concerning the validity of section 208(d) of the act making appropriations for the Departments of State, Justice, Commerce, and the Judiciary for the fiscal year ending June 30, 1953, approved by the President on July 10, 1952. Pub. L. No. 82-495, 66 Stat. 549, 560.

Section 208(d) provides:

> None of the funds appropriated by this title may be used in the preparation or prosecution of the suit in the United States District Court for the Southern District of California, Southern Division, by the United States of America against Fallbrook Public Utility District, a public service corporation of the State of California, and others.

The case referred to in the subsection is a pending civil suit instituted by the government on January 25, 1951, in the United States District Court for the Southern District of California, Southern Division. The suit, which is in a pre-trial stage, seeks a judicial determination of the government's valuable riparian rights in the Santa Margarita River in California, which runs for approximately twenty-one miles through a 135,000 acre tract of land acquired by the government by purchase during the war and presently used as a naval establishment.

The question would seem to turn on whether or not section 208(d) represents a constitutional exercise of the legislative power of the Congress or constitutes an unwarranted encroachment on powers committed to the Judicial and Executive Branches of the government by the Constitution.

In *United States v. California*, the Supreme Court succinctly stated that the prosecution of claims on behalf of the United States is within the area of legislative control:

> An Act passed by Congress and signed by the President could, of course, limit the power previously granted the Attorney General to prosecute claims for the Government. For Article IV, § 3, Cl. 2 of the Constitution vests in Congress "Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States . . . ." We have said that the

> constitutional power of Congress in this respect is without limitation. *United States v. San Francisco*, 310 U.S. 16, 29–30 (1940). Thus neither the courts nor the executive agencies could proceed contrary to an Act of Congress in this congressional area of national power.

332 U.S. 19, 27 (1947). A similar view was expressed by the district court in the pending litigation. *United States v. Fallbrook Pub. Util. Dist.*, 101 F. Supp. 298, 301, 307 (S.D. Cal. 1951).

It might be urged, however, that, granting the Congress's plenary power to dispose of federal property, it has not clearly and unequivocally done so here. Rather, it might be said that the Congress has merely rendered the rights of the United States temporarily unenforceable in the courts by denying to the Executive the funds necessary to the discharge of its constitutional functions in the protection and vindication of such rights in the courts of the United States. In this view it might be argued that the Congress's action ignores the constitutional separation of powers and vitiates by indirection the proper discharge of the constitutional duties of the Judiciary and the Executive. However, the force of this argument would seem dissipated by the Congress's admitted legislative control over the property involved. If the Congress had sought to do in an appropriation measure what it would have had no constitutional power to do directly, a wholly different situation would be presented. *Cf. Constitutionality of Proposed Legislation Affecting Tax Refunds*, 37 Op. Att'y Gen. 56 (1933) (Mitchell, A.G.); *Constitutionality of Resolution Establishing United States New York World's Fair Commission*, 39 Op. Att'y Gen. 61 (1937) (Cummings, A.G.).

However, in denying the use of the appropriated funds for the preparation or prosecution of the *Fallbrook* suit, it cannot be doubted that the Congress intended to waive, for the time being at least, the rights asserted by the government in that suit. Since it seems clear, as the Supreme Court has stated in the *California* case, that the Congress could do that by direct legislation, there would scarcely appear to be a constitutional bar to doing it through a prohibition contained in an appropriation act. *Cf. United States v. Dickerson*, 310 U.S. 554 (1940).

It would seem, therefore, that section 208(d) is not subject to serious constitutional objection.

JOSEPH C. DUGGAN<br>
*Assistant Attorney General*<br>
*Executive Adjudications Division*